**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| W.J. BRADLEY MORTGAGE CAPITAL, LLC, *et.al.*,<br>*Debtors*. | Case No. 16-11049 (BLS)<br><br>Jointly Administered |
| GEORGE L. MILLER, Chapter 7 Trustee for the jointly administered Chapter 7 bankruptcy estates of W.J. Bradley Company Merchant Partners 2003-SEED, LLC, W.J. Bradley Mortgage Capital, LLC, W.J. Bradley Corporate Services, LLC, W.J. Bradley Financial Services, LLC, and WJB Mortgage Services, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>WILLIAM J. BRADLEY, JOSEPH A. CAMBI, ARTHUR S. DEMOULAS, GERARD LEVINS, AUDREY KIRDAR, DANIEL BARUCH, HOWARD MICHALSKI, ASD MERCHANT PARTNERS LLC, SPRINGFIELD CAPITAL, LLC, ARTHUR S. DEMOULAS CONTINUATION TRUST, ARTHUR S. DEMOULAS 2012 TRUST, and PETER PICKNELLY,<br><br>*Defendants*. | Adv. Pro. No. 18-50385 (BLS) |

**RESPONSE IN OPPOSITION TO DEMOULAS DEFENDANTS' MOTION FOR**
**JUDGMENT ON THE PLEADINGS ON COUNTS II AND V OF THE COMPLAINT**
**PURSUANT TO FED. R. CIV. P. 12(c)**

KAUFMAN, COREN & RESS, P.C.
Steven M. Coren, Esq.
Benjamin M. Mather, Esq.
Francis X. Lane, Esq.
2001 Market Street, Suite 3900
Philadelphia, PA 19103
Tel: (215) 735-8700

GELLERT SCALI BUSENKELL &
BROWN LLC
Ronald S. Gellert, Esq. (DE No. 4259)
1201 N. Orange Street, 3rd Floor
Wilmington, DE 19801
Tel: (302) 425-5806

Dated:  April 24, 2020                                           *Attorneys for Plaintiff-Trustee*

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ....................................................................2

STATEMENT OF FACTS ........................................................................................................3

    A.  The Redemption Transaction.........................................................................................4

    B.  WJB Went Into a Death Spiral Immediately Following the Redemption
        Transaction....................................................................................................................7

    C.  The Complaint ..............................................................................................................7

ARGUMENT ..........................................................................................................................8

    A.  Legal Standard ..............................................................................................................8

    B.  The Complaint Sufficiently States Claims Against the Demoulas Defendants for
        Actual Fraudulent Transfer ...........................................................................................8

    C.  Granting the Motion Would Not Streamline this Litigation.......................................14

CONCLUSION......................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*ASARCO LLC v. Ams. Mining Corp.*, 396 B.R. 278 (S.D. Tex. 2008)........................................ 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................. 8, 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................................... 8

*Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm Ltd. P'ship IV*,
    229 F.3d 245 (3d Cir. 2000)........................................................................................................ 9

*In re Adelphia Commc'ns. Corp.*, 365 B.R. 24 (Bankr. S.D.N.Y. 2007) ................................... 11

*In re AgFeed USA, LLC*, 546 B.R. 318 (Bankr. D. Del. 2016)................................................... 11

*In re Am. Bus. Fin. Servs., Inc.*, 384 B.R. 80 (Bankr. D. Del. 2008)......................................... 10

*In re Blatstein*, 192 F.3d 88 (3d Cir. 1999)................................................................................. 14

*In re Charys Holding Co.*, 443 B.R. 628 (Bankr. D. Del. 2010) .................................................. 9

*In re DBSI, Inc.*, 2011 WL 1810632 (Bankr. D. Del. May 5, 2011) ........................................... 10

*In re DSI Renal Holdings, LLC*, 574 B.R. 446 (Bankr. D. Del. 2017) ....................................... 12

*In re Fedders N. Am., Inc.*, 405 B.R. 527 (Bankr. D. Del. 2009) ............................................... 10

*In re Hechinger Inv. Co. of Del.*, 327 B.R. 537 (D. Del. 2005).................................................. 10

*In re Hill*, 342 B.R. 183 (Bankr. D.N.J. 2006)........................................................................... 11

*In re Our Alchemy, LLC*, 2019 WL 447545 (Bankr. D. Del. Sept. 16, 2019) ............................ 12

*In re Polichuk*, 506 B.R. 405 (Bankr. E.D. Pa. 2014)........................................................... 10, 11

*In re SCI Real Estate Invests., LLC*, 2013 WL 1829648 (Bankr. C.D. Cal. May 1, 2013) .......... 13

*In re Spitko*, 2007 WL 1720242 (Bankr. E.D. Pa. June 11, 2007)............................................... 10

*In re Syntax-Brillian Corp.*, 573 F. App'x 154 (3d Cir. Aug. 11, 2014) ...................................... 9

*In re Tribune Co.*, 464 B.R. 126 (Bank. D. Del. 2011) ................................................................ 11

*In re Tronox Inc.*, 429 B.R. 73 (Bankr. S.D.N.Y. 2010).............................................................. 13

*In re W.J. Bradley Mortgage Capital, LLC, et al.*, U.S.B.C. D. Del., Case No. 16-11049 (KG)... 3

*In re Liquid Holdings Group, Inc.*, 2018 WL 2759301 (Bankr. D. Del. June 6, 2018)............... 10

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)...................................................... 8

*Syntax-Brillian Corp.*, No. 08-11407 (BLS), 2016 WL 1165634 (Bankr. D. Del. Feb 8, 2016) . 13

*Zazzali v. Mott (In re D'BSI, Inc.)*, 445 B.R. 344 (Bankr. D. Del. 2011).................................... 12

**Statutes**

11 U.S.C. § 544................................................................................................................. 7, 9

11 U.S.C. § 548................................................................................................................. 7, 9

6 Del. C. § 1304 ........................................................................................................................ 7, 9

6 Del. C. §1305 ........................................................................................................................... 7

## **INTRODUCTION**

Arthur S. Demoulas ("Demoulas") was a Member of the Debtors' Board of Managers who received $25 million for his interest in the Debtors, an amount which he knew was nearly twice its market value, at a time when the payment of even fair market value would have crippled the operations of the then-vulnerable Debtors.  The transaction caused a death spiral that led to the Board's vote just three months later to file for bankruptcy.  In short, Demoulas cashed out and left the Debtors and their creditors high and dry.  He was an insider, the Debtors did not receive adequate consideration, and the transaction left the Debtors without sufficient capital to operate, driving them into bankruptcy in just a matter of months.  All of these badges of fraud are explicitly alleged in the Complaint and together state a claim that the $25 million transferred to Demoulas is avoidable and recoverable by Chapter 7 Trustee George L. Miller, (the "Trustee") as an actual fraudulent transfer.

This case provides a textbook example of the existence of multiple badges of fraud that provide circumstantial evidence of actual fraudulent intent.  These badges of fraud have been recognized time and time again by the courts of this District.  Nonetheless, nearly two years after the Complaint was filed, and just as discovery is starting on the two remaining counts against them, the lone remaining group of defendants, the Demoulas Defendants,[1] have filed a Motion for Judgment on the Pleadings in a misguided effort to dismiss the actual fraudulent transfer claims.

The  Demoulas Defendants' position has no merit.  And granting this motion would not serve any efficiency purpose, as the parties are moving forward with discovery while the motion

---

[1] The "Demoulas Defendants" are Demoulas and three entities he controls:  ASD Merchant Partners LLC, Arthur S. Demoulas Continuation Trust, and Arthur S. Demoulas 2012 Trust.

is pending in any event.  The Motion does not promote judicial economy; rather its only effect is to deplete the resources of the Debtors' estates as the parties begin discovery.  The Demoulas Defendants acknowledge that there is a need for discovery on "key disputed issues" that bear on constructive fraudulent transfer (like reasonably equivalent value and solvency).  Those same issues relate to actual fraudulent transfer as well, and thus the same documents will need to be produced and the same depositions will need to be taken regardless of whether this Motion is granted.

The Trustee, who gets the benefit of liberal pleading rules, has more than sufficiently stated claims of actual fraudulent transfer.  The Demoulas Defendants' arguments are more appropriately raised at the summary judgment stage following discovery, which will occur in this case regardless of the outcome of the Motion.

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff George L. Miller, the Chapter 7 Trustee for the jointly administered Chapter 7 bankruptcy estates of W.J. Bradley Company Merchant Partners 2003-SEED, LLC ("WJB SEED"), W.J. Bradley Mortgage Capital, LLC ("WJB Mortgage Capital"), W.J. Bradley Corporate Services, LLC ("WJB Corporate Services"), W.J. Bradley Financial Services, LLC ("WJB Financial Services"), and WJB Mortgage Services, LLC ("WJB Mortgage Services") (collectively, the "WJB entities," "WJB," or the "Debtors"), by and through his counsel, hereby responds to the Motion for Judgment on the Pleadings on Counts II and V of the Complaint filed by the Demoulas Defendants (the "Motion").

The Debtors filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code on April 28, 2016 (the "Petition Date") in the United States Bankruptcy Court for the District of Delaware.  The cases are being jointly administered under the caption *In re W.J. Bradley*

2

*Mortgage Capital, LLC, et al.*, U.S.B.C. D. Del., Case No. 16-11049 (KG).  Plaintiff George L. Miller is the duly-appointed Chapter 7 Trustee of the Debtors.  On April 16, 2018, the Trustee commenced the instant adversary proceeding by filing a Complaint (the "Complaint") (Adv. Dkt. #1), which asserts claims for relief under the Bankruptcy Code and state law against a number of defendants, including the former officers and directors of Debtors, their affiliated companies and other investors. [2]  Several Settled Defendants, not including the Demoulas Defendants, filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which the Court denied in part, and granted in part.  Adv. Dkt. # 63.

On December 18, 2019 the Trustee, the Settled Defendants, and the Demoulas Defendants engaged in a full-day mediation with the Honorable Myron T. Steele, former Chief Justice of the Delaware Supreme Court.  At or shortly following the mediation, the Trustee reached a settlement with the Settled Defendants on the claims the Court did not dismiss.  And as part of the settlement agreement, the Trustee agreed to dismiss his breach of fiduciary duty claims against the Demoulas Defendants.  The Court approved that settlement agreement on January 28, 2020.  Adv. Dkt. #87.  The only claims remaining are those against the Demoulas Defendants seeking avoidance and recovery of the $25 million transferred to the Demoulas Defendants in connection with the Redemption Transaction.

## STATEMENT OF FACTS

As alleged in the Complaint, in the years immediately preceding the Debtors' Chapter 7 filings, the Demoulas Defendants, along with the officer and manager Settled Defendants, caused the Debtors to pay over $36 million in fraudulent and preferential transfers to insiders.  Chief

---

[2] All Defendants other than the Demoulas Defendants have settled the claims against them and do not admit the facts alleged in the Complaint, nor do they admit any wrongdoing or liability. They are referred to herein as "Settled Defendants."

among these transfers are the five separate transfers either to Demoulas – who was a member of

Debtors' Board of Managers – or entities Demoulas controlled, totaling $25 million.  Compl. ¶ 2.

Those transfers were made as part of a transaction to redeem the Demoulas Defendants' shares in

Debtor WJB SEED (the "Redemption Transaction").  Following the Redemption Transaction,

Debtors were insufficiently capitalized and soon filed the Petition.

Settled Defendant William J. Bradley ("Bradley") was President and Chief Executive

Officer ("CEO") of WJB and a member of the WJB Board of Managers (the "Board").  *Id.* ¶ 9.

Settled Defendant Joseph Cambi ("Cambi") was Chairman of the Board of WJB and President

and Manager of Settled Defendant Springfield Capital LLC ("Springfield"), which was a

member of WJB.  *Id.* ¶ 10; Compl. Ex. A.  Settled Defendants Gerard Levins ("Levins") and

Audrey Kirdar ("Kirdar") were both members of the Board of WJB, and they were appointed as

such by Demoulas.   *Id.* ¶¶ 12-13.  Settled Defendant Daniel Baruch ("Baruch") was Chief

Operating Officer and Senior Managing Director of WJB.  *Id.* ¶ 14.  Settled Defendant Howard

Michalski ("Michalski") was Executive Managing Director of WJB.  *Id.* ¶ 15.

### A.  The Redemption Transaction

The original W.J. Bradley Company was founded in 1999.  In 2003, Bradley and Cambi

launched W.J. Bradley Merchant Partners, LLC with plans to effect a large-scale consolidation

strategy in the residential mortgage industry.  *Id.* ¶ 21.  As a result of the housing crisis, WJB

Mortgage Partners consolidated its portfolio of companies and restructured in 2007 and 2008, as

a result of which Demoulas, through Defendant ASD Merchant Partners LLC ("ASD"), acquired

a 65% controlling share of WJB.  *Id.*  Bradley and Cambi found Demoulas to be impossible to

work with and were never able to fully come to grips with their loss of control over the company,

or with the control enjoyed by Demoulas.  *Id.* ¶ 23.

4

On April 2, 2015 a Membership Interest Purchase Agreement ("MIPA") was entered into between Springfield, ASD and WJB, under the terms of which, Springfield was to purchase ASD's 65% membership interest in WJB for $25 million. *Id.* ¶ 37. The sale contemplated by the original MIPA was heavily renegotiated over the next 8 months. During that period, the structure changed, as WJB decided to redeem ASD's entire membership interest in lieu of Springfield purchasing it. *Id.* ¶ 44.

As alleged in the Complaint, Demoulas simply wanted to receive $25 million for his interest in WJB, regardless of its true value, and regardless of the impact that this would have on the Debtors' obligations to their creditors. *Id.* ¶¶ 33, 35. Bradley and Cambi wanted to get rid of Demoulas, who was threatening litigation against them. The three of them worked throughout 2015 to achieve their respective personal goals with regard to completing the Redemption Transaction, while ignoring the interests of WJB and its creditors. *Id.* ¶ 36.

Demoulas and the Settled Defendants were aware that the shares owned by ASD were worth far less than $25 million. *Id.* ¶ 39. In March 2015, investment bankers Houlihan Lokey ("HL") completed a presentation to the WJB board (including Demoulas), which outlined certain guidelines for estimating the value of WJB. The HL presentation gave an approximate valuation of $26.6 million for the entirety of WJB. Based on a $26.6 million valuation for the entire company, ASD's 65% interest was worth just over $17 million. *Id.* ¶ 41. Bradley was aware of, and agreed with, this valuation. *Id.* ¶ 42.

As Bradley pointed out in an email, the $25 million price had no connection to a true market value and was based simply on what Demoulas demanded. *Id.* ¶ 43. As WJB Chief Financial Officer Roy Browning noted in an email, "Just because ASD and Springfield agreed the price for 65% is $25M, it is not an arm's length transaction . . . . Only an independent third

5

party will be able to determine a range of likely values." *Id.* Such an independent valuation was never done. *Id.*

While negotiating the transaction, Demoulas and the Settled Defendants were aware that the $25 million sale price would leave WJB with very little, if any, cash to operate. Cambi remarked on November 10, 2015 that "we are putting every penny on the line getting ASD what we said we would . . . ." *Id.* ¶ 48. And Jason Schendel, attorney for WJB, wrote "I understand that Springfield is tapped out and WJB is obviously squeezing every dollar possible into the redemption." *Id.* ¶ 49. Despite this, Demoulas repeatedly threatened to take legal action to force the transaction through. *Id.* ¶ 47.

Ultimately, despite the fact that Demoulas and the other Board members knew that ASD's shares were worth, at most, only $17.55 million, Demoulas demanded $25 million, and the other Board members approved that transaction. *Id.* ¶ 51. In reality, the Board and the Officers of Debtors, including Demoulas, knew, or should have known, that the true value of ASD's shares, in the context of the Redemption Transaction, was actually $0. It was a worthless asset once the Redemption Transaction was executed because the company immediately collapsed and had virtually zero cash flow within 30 days of the closing of the Redemption Transaction. *Id.* ¶ 52. This result either was, or should have been, evident to Demoulas and the Settled Defendants before they ever entered into the Redemption Transaction. *Id.* In short, Demoulas and the other Board members approved the transaction despite the fact that it left WJB unable to conduct business going forward, with its cash reserves now depleted. *Id.* ¶ 53. In fact, counsel for the Debtors termed the transaction as a "looting" of Debtors' assets. *See id.* ¶ 54.

The Redemption Transaction finally closed on December 9, 2015. The redemption price was the same $25 million as the original planned purchase price, despite the fact that the

financial condition of WJB had worsened through 2015.  *Id.* ¶ 55.  The Redemption Transaction consisted of five separate transfers totaling $25 million made on December 9, 2015 to Demoulas or entities he controlled (collectively, the "Redemption Transfers").  *Id.* ¶ 56.

**B.  WJB Went into a Death Spiral Immediately Following the Redemption Transaction**

Unsurprisingly, the poor financial condition of WJB leading up to the Redemption Transaction became almost instantly evident after the transaction was closed.  Within weeks, the company was scrambling for cash.  *Id.* ¶¶ 61-63.  According to Cambi, just over a month after the Transaction, "the fat lady isn't singing yet, but she seems to be on stage."  *Id.* ¶ 67.  Demoulas took the money and ran, while the company's creditors got nothing.  He had been on both sides of the transaction and acted only in his own interests.  *Id.* ¶ 71.  By February 2016, WJB was, *inter alia*, failing to fund loans, and unable to repay its obligations to lenders in connection with the Redemption Transaction.  *Id.* ¶ 75.  On March 13, 2016, the Board executed a formal resolution determining that an orderly wind-down of operations and a Chapter 7 bankruptcy filing was necessary and the best course of action for creditors.  *Id.* ¶ 76.  On April 28, 2016, WJB commenced its bankruptcy filing.  *Id.* ¶ 77.

**C.  The Complaint**

After mediation, only the following claims remained against the Demoulas Defendants (who are now the only remaining Defendants):

- **COUNT 2** – Avoidance of Transfers related to the Redemption Transaction pursuant to 11 U.S.C. § 548(a)(1)(A) (actual fraudulent transfer) ;

- **COUNT 3** – Avoidance of Transfers related to the Redemption Transaction pursuant to 11 U.S.C. § 548(a)(1)(B) (constructive fraudulent transfer);

- **COUNT 5** – Avoidance of Transfers related to the Redemption Transaction pursuant to 6 Del. C. §§ 1304, 1305 and 11 U.S.C. § 544;

- **COUNT 6** – Recovery of Transfers related to the Redemption Transaction under 11 U.S.C. § 550.

The Demoulas Defendants' Motion seeks judgment on the pleadings with respect to Count 2 (actual fraudulent transfer) and with respect to Count 5 only to the extent it seeks avoidance under 6 Del C. § 1304(a)(1) (actual fraudulent transfer).  The Motion does not seek dismissal of the other remaining claims.

## ARGUMENT

### A.  Legal Standard

As the Demoulas Defendants acknowledge, a motion for judgment on the pleadings under Rule 12(c) – applicable here pursuant to Federal Rule of Bankruptcy Procedure 7012 – is analyzed under the same standard as a motion to dismiss pursuant to Rule 12(b)(6).  In ruling on a 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### B.  The Complaint Sufficiently States Claims Against the Demoulas Defendants for Actual Fraudulent Transfer

The Complaint alleges that the Debtors transferred $25 million to the Demoulas Defendants, an amount far in excess of the true value of the Demoulas Defendants' shares, which immediately sent the Debtors into a death spiral that led to their bankruptcy.  Under the Bankruptcy Code and the case law, these transfers are recoverable as actual fraudulent transfers.

Fraudulent conveyance law exists "to make available to creditors those assets of the debtor that are rightfully a part of the bankruptcy estate, even if they have been transferred away." *Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm Ltd. P'ship IV*, 229 F.3d 245, 250 (3d Cir. 2000). To this end, Congress has established a statutory framework by which transfers may be deemed fraudulent, and thus avoided by bankruptcy trustees. One way is through proving there was an actual fraudulent transfer under 11 U.S.C. § 548(a)(1)(A). Under that subsection, the trustee may avoid transfers of an interest of the debtor in property made within two years before the date of the filing of the bankruptcy petition, if the debtor "made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud" its creditors. The Delaware Uniform Fraudulent Transfer Act likewise permits the recovery of actual fraudulent transfers, and Section 544 of the Bankruptcy Code authorizes the avoidance of transfers of the debtor's property that are avoidable by unsecured creditors under applicable state law. *See* 11 U.S.C. § 544; 6 Del. C. § 1304(a)(1). [3] In the Motion and Supporting Memorandum of Law (the "Memorandum"), the Demoulas Defendants do not contest that the Complaint alleges the Redemption Transfers are transfers of the Debtors' property that were made within two years before the April 28, 2016 filing of the bankruptcy petition.

Because they sound in fraud, the Trustee's claims for actual fraudulent transfer are generally subject to Federal Rule of Civil Procedure 9(b), made applicable here by Federal Rule of Bankruptcy Procedure 7009, which states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent,

---

[3] The requirements to state claims for avoidance of actual and constructive fraudulent transfers under the Delaware UFTA are substantially the same as those under Section 548 of the Bankruptcy Code. *See In re Syntax-Brillian Corp.*, 573 F. App'x 154, 160-61 (3d Cir. Aug. 11, 2014); *In re Charys Holding Co.*, 443 B.R. 628, 635-36 (Bankr. D. Del. 2010).

knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P.

9(b).  However, it is well-settled that "[a] bankruptcy trustee, as a third-party outsider to the

debtor's transactions, is generally afforded greater liberality in pleading fraud." *In re Am. Bus.*

*Fin. Servs., Inc.*, 384 B.R. 80, 85 (Bankr. D. Del. 2008); *see also In re Fedders N. Am., Inc.*, 405

B.R. 527, 544 (Bankr. D. Del. 2009).  And despite the fact that the Trustee did have pre-

Complaint access to the ***Debtors'*** emails and other documents, the Trustee has not had the

opportunity to conduct discovery on ***Demoulas*** and obtain any emails or other documents that

may bear on the question of fraudulent intent.

Moreover, because the parties to an actual fraudulent transfer rarely acknowledge their

fraudulent intent, circumstantial evidence suffices for pleading and proving actual fraud.  *In re*

*Polichuk*, 506 B.R. 405, 417 (Bankr. E.D. Pa. 2014).  Thus, in the context of an actual fraudulent

transfer claim, the "trustee can sufficiently plead fraudulent intent by alleging certain 'badges of

fraud.'"  *In re Liquid Holdings Group, Inc.*, 2018 WL 2759301 (Bankr. D. Del. June 6, 2018), at

*17 n.32 (*quoting In re DBSI, Inc.*, 2011 WL 1810632, at *3 (Bankr. D. Del. May 5, 2011)).

These "badges of fraud," include, *inter alia*: the lack of or inadequacy of consideration for the

transfer; whether the transfer was to an insider; the debtor's insolvency at the time of the

transfer; and the general chronology of events and transactions under inquiry.  *Id.* at *17; *see*

*also In re Spitko*, 2007 WL 1720242, at *13 (Bankr. E.D. Pa. June 11, 2007) (citations omitted).

Other cases have also identified "how much of the debtor's estate was transferred" as a badge of

fraud.  *See, e.g.*, *In re Hechinger Inv. Co. of Del.*, 327 B.R. 537, 551 (D. Del. 2005).

While the presence or absence of any single badge of fraud is "not conclusive," "'[t]he

presence of a single ... badge of fraud may cast suspicion on the transferor's intent,'" and "'the

confluence of several in one transaction generally provides conclusive evidence of an actual

intent to defraud.'" *In re AgFeed USA, LLC*, 546 B.R. 318, 335 (Bankr. D. Del. 2016) (*quoting*

*In re Hill*, 342 B.R. 183, 198 (Bankr. D.N.J. 2006)).  "A court may, of course, consider factors

other than the traditional badges of fraud in an analysis of fraudulent intent," such as, for

example, if the "natural consequence" of the transfer is that the debtor's creditors were hindered,

delayed, or defrauded.  *In re Tribune Co.*, 464 B.R. 126, 162 (Bank. D. Del. 2011).  Ultimately,

the fact-specific determination of whether a transfer was made with fraudulent intent is "rarely

susceptible to resolution at the summary judgment stage," let alone on a motion for judgment on

the pleadings.  *Polichuk*, 506 B.R. at 418; *In re Adelphia Commc'ns. Corp.*, 365 B.R. 24, 35

(Bankr. S.D.N.Y. 2007).

     The Trustee has clearly pled enough badges of fraud to state a claim for actual fraudulent

transfer at the pleading stage.  The Complaint alleges in great detail that (1) the consideration for

the Redemption Transfers was inadequate given the true valuation of the redeemed shares; (2)

the Demoulas Defendants were undoubtedly insiders of the Debtors; (3) the Transfers rendered

the Debtors insolvent; (4) the transfers involved such a large portion of the Debtors' estates that

it constituted "every penny" they had and a "looting" of their assets; and (5) the general

chronology of events surrounding these payments demonstrates fraudulent intent given that the

Debtors almost immediately collapsed after the Transaction, leaving Demoulas with $25 million

that otherwise could have gone to creditors.  *See* Compl, *e.g.*, ¶¶ 2, 11, 17, 35, 38-43, 47-49, 51-

55, 61-63, 66-67, 71-77 .  In short, the "natural consequence" of the transaction was that Debtors

almost immediately went out of business after one of the Board members ran away with $25

million for his interest in the Debtors.  *See In re Tribune Co.*, 464 B.R. at 162.

     The Complaint explicitly alleges that Demoulas cared only about cashing out and that all

involved in the transaction knew the Redemption Transaction would leave the Debtors

11

undercapitalized.  This alone constitutes the intent needed for an actual fraudulent transfer.  "[I]f

one acts with knowledge that creditors will be hindered or delayed by a transfer but then

intentionally enters the transaction in disregard of this fact, he acts with actual intent to hinder

and delay them." *In re DSI Renal Holdings, LLC*, 574 B.R. 446, 467 (Bankr. D. Del. 2017)

(*quoting ASARCO LLC v. Ams. Mining Corp.*, 396 B.R. 278, 387 (S.D. Tex. 2008) (applying

Delaware law)).  The Redemption Transaction Transfers were made to the Demoulas Defendants

in exchange for shares worth far less than what was paid at the same time that the same insiders

were negotiating the very transaction that led to the demise of the company.  As alleged in the

Complaint, these payments did not benefit Debtors; rather they only benefited the insider

recipients of them, namely the Demoulas Defendants.

The Complaint adequately sets forth the circumstances of the alleged fraudulent transfers,

including sufficient indicia of actual fraudulent intent.  Other courts have agreed with regard to

similar allegations.  For example, in *In re Our Alchemy, LLC*, 2019 WL 447545 (Bankr. D. Del.

Sept. 16, 2019), the Court found sufficient badges of fraud to survive a 12(b)(6) motion.  There,

as here, the transferee was an insider.  2019 WL 447545, at *6.  The court found that insolvency

was pled because, as here, the Trustee alleged that the transaction left the debtor with insufficient

capital to operate and thus the debtor "experienced liquidity issues and could not fund operations

shortly after the membership distribution." *Id.* ("[A] close analysis of insolvency is not

necessary at this stage of the proceeding") (citing *Zazzali v. Mott (In re D'BSI, Inc.)*, 445 B.R.

344, 349 (Bankr. D. Del. 2011)).  Third, the trustee had sufficiently alleged that a substantial

portion of the estate was transferred because, as here "all capital available to fund operations was

transferred away." *Id.* at *7.  Finally, as here, the Trustee in *Our Alchemy* also alleged

insufficient consideration.  *Id.*  The court concluded that "[f]our badges of fraud are certainly

enough for an actual fraudulent transfer claim to survive a 12(b)(6) motion." *Id.*

The *Our Alchemy* court also refused to dismiss actual fraudulent transfer claims relating to another transaction with only three badges of fraud (where the transfer was not to an insider), even though the defendants argued that the transaction "was the product of arm's length negotiations between sophisticated parties." *Id.* Thus, the Demoulas Defendants' argument that the Redemption Transaction involved "independent counsel" carries no water. *See* Memo at 14. Meanwhile, in the face of voluminous clear precedent from this District, the Demoulas Defendants do not cite a single case in which, as here, multiple badges of fraud were sufficiently alleged but the court dismissed an actual fraudulent transfer claim at the pleading stage. In fact, in *In re Tronox Inc.,* 429 B.R. 73, 94 (Bankr. S.D.N.Y. 2010), a case from outside this district and circuit cited on page 12 of the Memorandum of Law, the court found four badges of fraud *was* sufficient to state a claim. The Demoulas Defendants reach all the way to California to cite *In re SCI Real Estate Invests., LLC*, 2013 WL 1829648, at *4 (Bankr. C.D. Cal. May 1, 2013), a case applying the California Uniform Fraudulent Transfers Act, and not the Bankruptcy Code. But even there, the claim was dismissed only because the plaintiff had alleged legal conclusions and not facts supporting the badges of fraud. *See id.* at *5.

In order to distract from the multiple badges of fraud pled in the Complaint, the Demoulas Defendants focus on the fact that the Complaint alleges that Bradley and Cambi had other motivations for the transfers, *i.e.*, getting rid of Demoulas. But this does not undermine the Trustee's claims. First, as the Demoulas Defendants acknowledge, Demoulas himself was on the Board, so his own intent "may be imputed [to Debtors] as part of the fraudulent transfer analysis." *See* Motion at 2 n. 4 (*citing*, *inter alia*, *Syntax-Brillian Corp.*, No. 08-11407 (BLS), 2016 WL 1165634, at *4 (Bankr. D. Del. Feb 8, 2016)). Second, just because one of Bradley

13

and Cambi's motivations was to get rid of Demoulas, this does not mean that they did not also have an intent to defraud creditors by giving into Demoulas's demands. *See, e.g.*, *In re Blatstein*, 192 F.3d 88, 97 (3d Cir. 1999) (defendant with intent to hinder or delay a creditor is liable for fraudulent transfer "notwithstanding any other motivation he may have had for the transfer") (applying Pennsylvania Uniform Fraudulent Transfers Act). Based on the allegations in the Complaint, it is certainly reasonable to infer that Bradley and Cambi were interested in eliminating any potential liability they or the Debtors would have to Demoulas – who was already threatening to sue – even if that put other creditors in peril. *See, e.g.*, *Iqbal*, 556 U.S. at 678 (claim is stated "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

### C. Granting the Motion Would Not Streamline this Litigation.

The Demoulas Defendants' Motion was filed nearly two years after the filing of the Complaint, just as the parties are beginning discovery on issues that bear on both of the remaining claims. Contrary to the Demoulas Defendants' assertions, dismissing the actual fraudulent transfer claims would not streamline the litigation at all, and thus this Motion serves only as a distraction for the Trustee and the Court. The key disputed issues, including "reasonably equivalent value and solvency," which the Demoulas Defendants themselves identify, *see* Motion at 3, need to be litigated for both actual and constructive fraudulent transfer because ***those are badges of fraud***. Given the parties' efforts to date on settlement, the litigation has already been very streamlined and the disputed issues are already quite clearly in focus.

The parties are beginning discovery now, with a Scheduling Order in place that requires fact discovery to be completed by September 30, 2020 (Adv. Dkt. #95). Because discovery will cover the same issues anyway, the Motion serves no efficiency purpose. Regardless of the

outcome of this Motion, the same documents will be requested, the same depositions will take place (including Demoulas, Bradley, Cambi and other director and officer defendants), the same experts will be named, and the Demoulas Defendants will have the same opportunity to file a summary judgment motion following discovery.  At that point, the facts adduced in discovery will be known.

## **CONCLUSION**

For the reasons in the foregoing Response, the Demoulas Defendants' Motion should be denied.

Dated: April 24, 2020                              Respectfully submitted,


                                                   */s/ Ronald S. Gellert*
                                                   Ronald S. Gellert, Esq. (DE No. 4259)
                                                   Gellert Scali Busenkell & Brown LLC
                                                   1201 N. Orange Street, 3rd Floor
                                                   Wilmington, DE 19801
                                                   Tel: (302) 425-5806

                                                   Steven M. Coren, Esq. (admitted *pro hac vice*)
                                                   Benjamin M. Mather, Esq. (admitted *pro hac vice*)
                                                   Francis X. Lane, Esq. (admitted *pro hac vice*)
                                                   Kaufman, Coren & Ress, P.C.
                                                   Two Commerce Square, Suite 3900
                                                   2001 Market Street
                                                   Philadelphia, PA 19103
                                                   Tel: (215) 735-8700

                                                   *Counsel for George L. Miller, Plaintiff and Chapter 7 Trustee*

15